Roman M. Silberfeld (SBN 62783)
rsilberfeld@robinskaplan.com
Jennifer W. Leland (SBN 185951)
jleland@robinskaplan.com
Glenn A. Danas (SBN 270317)
gdanas@robinskaplan.com
ROBINS KAPLAN LLP
2049 Century Park E., Suite 3400
Los Angeles, CA 90067
Telephone: 310 552 0130
Facsimile:  310 229 5800

Michael F. Ram (SBN 104805)
mram@robinskaplan.com
Marie N. Appel (SBN 187483)
mappel@robinskaplan.com
ROBINS KAPLAN LLP
2440 W. El Camino Real, Suite 100
Mountain View, CA 94040
Telephone: 650 784 4040
Facsimile:  650 784 4041

Samuel J. Strauss (*pro hac vice to be filed*)
Sam@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson Street, #201
Madison, WI 53703
Telephone: 608 237 1775
Facsimile:  608 509 4423

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL ABEL, EWELINA CIULA, MARGUERITE FLOYD, DEBRA HARTZELL and TASHA WILLIAMS, individually, and on behalf of a class of similarly situated individuals, | Case No.   2:20-cv-04949 <br><br> **CLASS ACTION COMPLAINT** |

Plaintiffs,

v.

AMERICAN HONDA MOTOR
COMPANY, INC., a California
corporation, and DOES 1 through
10,

Defendant.

**JURY TRIAL DEMANDED**

Plaintiffs DANIEL ABEL, EWELINA CIULA, MARGUERITE FLOYD, DEBRA HARTZELL and TASHA WILLIAMS, individually and on behalf of all others similarly situated, bring this Class Action Complaint against defendant AMERICAN HONDA MOTOR COMPANY, INC. and DOES 1-10 (collectively, "Defendant" or "Honda") and allege as follows.

## INTRODUCTION

1.      This Class Action is brought on behalf of all consumers in the United States who purchased or leased a 2016-2020 Acura MDX or a 2019-2020 Acura RDX (collectively, the "Vehicles" or "Affected Vehicles").

2.      The Affected Vehicles pose a significant and immediate safety threat to all users of such Vehicles and to the public in general because they contain design, manufacturing and/or workmanship defects that cause sudden, rapid deceleration, engine stalls, hesitation upon depression of the gas pedal, abrupt shutdowns and shifts in neutral while driving. Plaintiffs are informed and believe that these events are happening due to miscommunication between the computers and software that control the engine, throttle and transmission (the "Defect"). The Defect often arises at highway speeds such as when drivers are changing lanes or passing other vehicles—times when acceleration, not deceleration, is required.

3.      The Defect, which is present in each Affected Vehicle and exists at the time of sale or lease to each Class Member, renders the Affected Vehicles unsafe

and unfit to drive. Each of the individual Plaintiffs experienced the Defect, putting them, their passengers and other drivers at serious risk of injury.

4.     Defendant has concealed and failed to disclose this critical safety defect to their significant financial gain. Further, although numerous consumers have experienced and reported the Defect to Defendant, Defendant has not adequately repaired or otherwise addressed the Defect. At all times relevant to this action, Defendant marketed, sold, distributed, advertised, warranted, serviced and maintained such Vehicles as safe to use, when, in fact, Defendant had reason to know, and did know, that their Affected Vehicles were not safe to use for their intended purpose. The Affected Vehicles pose a serious risk to the safety of owners, users, passengers, occupants, pedestrians and fellow drivers including significant injury or death. Had Defendant disclosed the Defect, Plaintiffs and other owners and/or lessees of the Affected Vehicles would not have purchased or leased their Vehicles, or would have paid significantly less for them.

5.     In addition, Defendant provides a New Vehicle Limited Warranty that covers the Affected Vehicles for 4 years or 50,000 miles and a Powertrain Limited Warranty for 6 years or 70,000 miles. Defendant was required to repair the Defect under the terms of these warranties but failed to do so.

6.     Pursuant to Rules 23(b)(2), and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs will seek certification of a national Class consisting of:

> All purchasers or lessees of a 2016-2020 Acura MDX or a 2019-2020 Acura RDX.

and certification of the following Sub-Classes:

> California Sub-Class: All purchasers or lessees of a 2016-2020 Acura MDX or a 2019-2020 Acura RDX who reside in or purchased or leased their Affected Vehicles in the State of California.

Colorado Sub-Class: All purchasers or lessees of 2016-2020 Acura MDX or a 2019-2020 Acura RDX who reside in or purchased or leased their Affected Vehicles in the State of Colorado.

Maryland Sub-Class: All purchasers or lessees of 2016-2020 Acura MDX or a 2019-2020 Acura RDX who reside in or purchased or leased their Affected Vehicles in the State of Maryland.

Wisconsin Sub-Class: All purchasers or lessees of 2016-2020 Acura MDX or a 2019-2020 Acura RDX who reside in or purchased or leased their Affected Vehicles in the State of Wisconsin.

7.     Excluded from the Class are all Persons who are employees, directors, officers, or agents of Defendant or its respective subsidiaries and affiliated companies, as well as the judges, clerks, and staff members of the United States District Court for the Central District of California, the Ninth Circuit Court of Appeals, the United States Supreme Court, and their immediate family members. Also excluded from the Class are all claims for personal injury relating in any way to the 2016-2020 Acura MDX or 2019-2020 Acura RDX vehicles. Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Classes should be expanded or modified.

8.     Defendant has violated state and federal consumer protection laws and breached their express and implied warranties. Plaintiffs seek injunctive and declaratory relief, damages, restitution and disgorgement of profits arising out of Defendant's wrongful conduct resulting in the distribution, sale, warranting, maintenance, service and repair, and continued unsafe operation of the Affected Vehicles.

\\\

\\\

\\\

# THE PARTIES

## Plaintiffs

9.      Plaintiff Daniel Abel is a resident of Wisconsin who resides in Verona, Wisconsin.  In October 2018, he purchased a new Acura RDX from an authorized dealer in Middleton, Wisconsin.

10.     Plaintiff Ewelina Ciula is a resident of Colorado who resides in Broomfield, Colorado. In September 2018, Ms. Ciula purchased a new 2019 Acura RDX from Courtesy Acura in Aurora, Colorado.

11.     Plaintiff Marguerite Floyd resides in Chula Vista, California. In January 2017, Ms. Floyd purchased a 2016 Acura MDX from David MacDavid Acura in Austin, Texas.

12.     Plaintiff Debra Hartzell resides in both Venice, Florida and Baltimore Maryland. In or around November 2018, Ms. Hartzell purchased a new 2019 Acura RDX from Norris Acura West, an authorized Acura dealer in Ellicott City, Maryland.

13.     Plaintiff Tasha Williams is a resident of Maryland who resides in Glendale, Maryland. In or around August 2018, Ms. Williams purchased a new 2019 Acura RDX from Acura of Laurel, an authorized Acura dealer in Laurel, Maryland.

14.     Plaintiffs purchased their Acura vehicles primarily for personal, family, or household use.

15.     The safety and reliability of the vehicle were important factors in Plaintiffs' decision to purchase the Affected Vehicles. Had Honda disclosed its knowledge of the defect before Plaintiffs purchased the Affected Vehicles, Plaintiffs would not have purchased their Vehicles, or would have paid less for them.

16.     Plaintiffs bring this action individually and as a Class Action on behalf of current and former lessors and owners of Affected Vehicles whose

CLASS ACTION COMPLAINT          5

Vehicles have suffered from the safety defect alleged here, and who have lost money and suffered injury in fact as a result. In this regard, Plaintiffs act not only for themselves but as representatives of a Class of similarly situated individuals who fall within the description set forth in paragraphs 6 and 7 above.

**Defendant**

17.     Defendant American Honda Motor Company, Inc. is a corporation organized and in existence under the laws of the State of California and registered to do business in the State of California. Honda is responsible for sales, marketing, service, distribution, import and export of Acura branded products, including the Affected Vehicles, in California and in the United States. Honda is the warrantor of Acura vehicles, including the Affected Vehicles, in California and throughout the United States.

**JURISDICTION AND VENUE**

18.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which in the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one Plaintiff is a citizen of a state different from Defendant.

19.     Venue is proper in this District pursuant to 28 U.S.C. 1391(a), (b) and (c). American Honda Motor Company, Inc. is registered to and is doing business within the State of California. Defendant does substantial business in the State of California, and within this Federal Judicial District, and otherwise maintains requisite minimum contacts with the State of California. Additionally, Defendant distributes in this district, receives substantial compensation and profits from sales, maintenance, and service of Affected Vehicles in this District, and has and continues to conceal and to make material omissions in this District so as to subject it to in personam jurisdiction in this District.

\\\

\\\

**FACTUAL ALLEGATIONS**

20.     Acura is advertised as the luxury vehicle division of Honda. The brand was launched in the United States in 1986 and markets itself as providing high-end, high-performance vehicles. Defendant also markets Acura as a leader in safety, advertising that:

- "Acura was the first luxury brand awarded top safety ratings across its entire model line."
- "Our unrelenting mission to help keep you safe inspires technologies as innovative as they are effective. Protection is at the heart of Acura design. After all, an Acura can be replaced. Your family cannot."
- "Acura is a leading automotive luxury nameplate that delivers Precision Crafted Performance – a commitment to evocative styling, high performance and innovative engineering, all built on a foundation of quality and reliability."
- "Acura's two best-selling models, the MDX and RDX, have been named as 2020 Best Family Luxury Cars by *Parents* magazine. . . . The vehicles receiving this award are those that have high safety performance and [are] fun for families to drive."

21.     Acura's statements about their commitment to, and reputation for, safety misled Plaintiffs and the Class into believing that the Affected Vehicles were one of the safest cars on the road when, in fact, the Defect rendered the Vehicles patently unsafe and put drivers, passengers and others at risk of serious injury and even death.  Defendant's statements about their commitment to, and reputation for, safety also created the duty to disclose to Plaintiffs and the Class the safety Defect. Instead, Defendant omitted to disclose the information they had regarding the Defect putting Plaintiffs, and the Class, at risk of serious injury and even death.

\\\

\\\

**The Defect**

22.     Each of the Affected Vehicles is equipped with a "Drive-by-Wire™" throttle system. Traditionally the throttle valve in a car, which opens and closes to adjust the air-flow into the engine, is controlled by a cable connected to the gas pedal. Drive by wire is a technology that replaces traditional physical connections and mechanical controls with electronic ones. Instead of using a cable, which provides a driver with control over the speed of a vehicle, a throttle by wire system uses electronic controls to "connect" the accelerator pedal to a throttle valve. The vehicle's on board computer system uses software to determine the required throttle position by analyzing data from various sensors such as gas pedal position sensors, engine speed sensors and vehicle speed sensors.

23.     According to Honda, its drive by wire technology provides "racing-inspired pedal movement and smooth powerful response with just-right throttle sensitivity for most situations by replacing traditional cables with electronic components. Data is instantly factored in from engine RPM, coolant temperature, road speed, transmission status and more." For the vehicle to accelerate when the gas pedal is depressed without hesitation or stalling, the powertrain components, including the throttle system, engine or electronic control module ("ECM") and transmission control module ("TCM") must all communicate with each other seamlessly.

24.     Plaintiffs are informed and believe that the Affected Vehicles suffer from a defect in design, manufacturing and/or workmanship where the throttle receives conflicting instructions from the gas pedal, the ECM and/or the TCM. In such situations, the throttle will malfunction, and either becomes stuck in position or otherwise fails to follow the command of the driver. This malfunction will cause the Vehicles to hesitate, stall, shut down, go into limp mode, or decelerate instead of accelerate at the command of the driver depressing the gas pedal.

25.     As a result of the Defect, Plaintiffs and Class Members are unable to

use their Vehicles as advertised. The Defect increases the risk of a crash because, at any time and without warning, the Affected Vehicles may spontaneously decelerate or worse, stall, increasing the likelihood of accidents on the road, serious injury, and death. And, although numerous consumers have specifically complained about it, Defendant has failed to acknowledge, let alone adequately address, the Defect.

26.     Within months of the first sales of 2016 Acura MDX vehicles, Honda began receiving complaints from consumers about hesitation on acceleration, stalling, and sudden shutdowns via its authorized dealers, as well as through safety complaint reports made to the National Highway Traffic Safety Administration ("NHTSA"). One such complaint, reported on August 3, 2015 states:

> WHILE DRIVING THE MDX SHIFTS IN NEUTRAL AND CANNOT BE SHIFTED OUT OF NEUTRAL. THIS HAS OCCURRED ON THE HIGHWAY MULTIPLE TIMES. THE INFORMATION DISPLAY SHOWS FIRST EMISSIONS PROBLEMS, THEN TRANSMISSION PROBLEM. ACURA HAS A TSB OUT FOR THIS B15-034, BUT WON'T APPLY IT UNTIL THE PROBLEM APPEARS. HAVING YOUR VEHICLE SHIFTING TO NEUTRAL IN A HIGH SPEED ENVIRONMENT IS EXTREMELY DANGEROUS. TSB B15-034 NEEDS TO BE A RECALL BEFORE THEIR MDX SHIFTS INTO NEUTRAL DRIVING ON THE HIGHWAY AND THEY BECOME IMMOBILIZED AND PEOPLE ARE KILLED AS A RESULT.

NHTSA ID Number: 10745761.

27.     Despite knowledge of the Defect and the dangerous safety risk it posed, Honda failed to disclose information about the Defect, failed to issue a comprehensive and effective recall, fix the Vehicles and instead continued to sell the Vehicles with the Defect.

28.     As the result of the Defect, Plaintiff Williams experienced sudden, unintended and rapid deceleration while driving her Acura on two separate

occasions. The first instance happened shortly after she purchased the vehicle in 2018. Ms. Williams was driving on a highway behind a large tractor trailer. Without Ms. Williams taking any action, her Acura suddenly decelerated when the car's sensors detected the presence of the trailer in front of Ms. Williams even though she was not at risk of colliding with the trailer. The second occasion happened in approximately July 2019. Ms. Williams was travelling on a highway and in an exit-only lane. Not wanting to exit, she indicated her plan to merge back onto the freeway. When she attempted to merge left in front of another car, instead of accelerating to get ahead of traffic, her vehicle decelerated in anticipation of a collision. The car coming up behind her was moving too quickly to stop and would have collided with her had the driver not been able to move into another lane to avoid impact. Ms. Williams reported the first instance to an Acura dealership who advised her that there was an issue with faulty driver assist mechanisms but offered no solution. No repairs were attempted or performed.

29.     Sometime after purchasing her car in November 2018, Plaintiff Hartzell went on a road trip from Florida to Maryland. While travelling on the freeway, Ms. Hartzell's car suddenly and dangerously decelerated from approximately 70 mph to 20 mph. Ms. Hartzell was not attempting to change lanes or driving too close to another car. She was unable to accelerate the car above 20 mph even when she stepped on the gas pedal. Assuming that she had run out of gas, she pulled over to the side of the freeway and had her car towed to a nearby Acura dealership. The dealership advised her that they tested the car and found no "error code" and that the car was safe to drive. No repairs were attempted or performed.

30.     Plaintiff Abel has experienced sudden and unintended deceleration while driving his car on the highway numerous times.  The deceleration frequently has occurred when he is merging onto the highway, or exiting from the highway as he is merging into or out of a lane.  One time, he tried to pass a tanker and once he got into the passing lane, the car decelerated, creating a dangerous situation.  Mr.

Abel wrote to Acura regarding the sudden deceleration, but has not been provided with any explanations or solutions.

31. In or around December of 2019, Plaintiff Ciula was driving on the highway when her vehicle spontaneously decelerated without her stepping on the brake. It was a frightening experience as she thought the car behind her was going to rear-end her. In or around February 2020, Ms. Ciula experienced sudden deceleration while trying to merge into another lane. While merging, she accelerated (because she could see in the rear-view mirror that there was another car behind her on the right lane). When she merged onto the right lane, the vehicle decelerated from 50 miles per hour to approximately 20 miles per hour, which caused the driver of the car behind her to slam on their brakes in order to avoid a collision.

32. Ms. Floyd experienced sudden, unintended deceleration, especially while the vehicle was travelling downhill, shortly after she purchased her Vehicle. Ms. Floyd's Vehicle continues to suffer from spontaneous, unintended deceleration to this day.

### Honda's Longstanding Knowledge of the Defect

33. The United States Code for Motor Vehicle Safety (Title 49, Chapter 301) defines motor vehicle safety as:

> [T]he performance of a motor vehicle or motor vehicle equipment in a way that protects the public against unreasonable risk of accidents occurring because of the design, construction, or performance of a motor vehicle, and against unreasonable risk of death or injury in an accident, and includes nonoperational safety of a motor vehicle.

A defect includes "any defect in performance, construction, a component, or material of a motor vehicle or motor vehicle equipment." Generally, a safety defect is defined as a problem that exists in a motor vehicle or item of motor vehicle equipment that poses a risk to motor vehicle safety, and may exist in a group of vehicles of the same design or manufacture, or items of equipment of the same type

1    and manufacture.

2         34.    The Defect is a safety defect and one about which Honda has long

3    been aware. On July 8, 2015, Honda issued a document entitled Technical Service

4    Bulletin ("TSB") No. PU-15-34 titled "Product Update: Vehicle Shifts into Neutral

5    and MIL Comes On with DTC P0657" that applied to the 2016 Acura MDX. This

6    TSB states that "[w]hile driving, the vehicle shifts into Neutral and the transmission

7    indicator comes on and DTC P0657 (actuator supply voltage circuit/open) is stored.

8    The driver will not be able to select any other gear until the vehicle is turned off and

9    restarted." The TSB recommended "update[ing] the PGM-FI software and TCM

10   software, clear[ing] any DTCs, and do[ing] the PCM idle learn procedure."

11        35.    On September 1, 2015, Honda notified owners and lessees of 2016

12   Acura MDXs of the foregoing and advised them to make an appointment to have

13   their vehicles repaired at an authorized Acura dealer free of charge. On information

14   and belief, the software update failed to repair the Defect, and Defendant continued

15   to manufacture, distribute, sell and lease the Affected Vehicles without disclosing

16   this critical safety defect.

17        36.    Instead, Defendant made a conscious decision to ignore the problem at

18   the expense of the safety of its customers and the public. In so conducting itself,

19   despite significant and exclusive knowledge of this material safety defect,

20   Defendant fraudulently concealed this safety problem, and otherwise prevented

21   reasonable consumers from discovering this hazard until such time as the Defect

22   manifests itself to the individual owner or operator through the frightening and

23   dangerous experience of unexpected and sudden deceleration, often while traveling

24   at high speeds.

25        37.    Honda's notice of and knowledge of this problem is confirmed by

26   multiple complaints to the NHTSA. The NHTSA regulates the safety of motor

27   vehicles and related equipment and provides a system for motor vehicle owners to

28   report complaints relating to safety defects that pose a risk of accidents in vehicles

manufactured or imported in the United States. The safety defect complaints are entered into the NHTSA consumer complaint automated database, which is accessible to manufacturers. NHTSA provides these consumer complaints to the vehicle's manufacturer, including Honda.

38.     Since 2015, more than 300 complaints have been reported to Honda through NHTSA concerning the Affected Vehicles. Many of these complaints relate to the alleged Defect. Consistently, consumers describe a sudden loss of acceleration or sudden deceleration, engine stalls or shutdowns, or hesitation upon depressing the gas pedal. A large number of these complaints indicate that the driver informed Defendant of their problem but Defendant took no action. By way of example:

- **February 26, 2019 NHTSA ID NUMBER: 11182482**
  Summary of Complaint: "WHILE CRUISING AT ABOUT 70MPH ON THE INTERSTATE, I ATTEMPTED TO ACCELERATE AND THE VEHICLE RPM WOULD DROP TO ABOUT 1000 RPM AND NOT ALLOW ME TO CONTROL THE ACCELERATION. REGARDLESS OF VARIOUS ATTEMPTS TO ACCELERATE THE VEHICLE CONTINUE TO LOSE MPH. AFTER 5-10 SECONDS, I WAS FINALLY ABLE TO REGAIN CONTROL OF THE VEHICLE. THIS HAS HAPPEN[ED] ON ABOUT 6 OCCASIONS SINCE I PURCHASED THE VEHICLE IN 2015. I'VE ATTEMPTED TO HAVE THIS ISSUE RESOLVED AT THE DEALERSHIP SERVICE. ON EACH OCCASION THEY STATED A SOFTWARE FIX WOULD CORRECT THE PROBLEM BUT THIS CONTINUES. . . ."

- **March 17, 2019 NHTSA ID NUMBER: 11187377**
  Summary of Complaint: "AT ACCELERATED SPEED ON THE INTERSTATE THE CAR STALLS AND RPMS GO UP. THE LAST TIME IT HAPPENED THE ENGINE LIGHT CAME ON. I PULLED OVER AND TURNED IT OFF FOR A FEW MINUTES. WHEN I TURNED IT BACK ON THE LIGHT WAS OFF AND THE RPMS WERE NORMAL. I TOOK IT TO THE DEALERSHIP AND THEY FOUND NOTHING WRONG. THIS HAS HAPPENED AT LEAST 6 TIMES."

- **July 8, 2019 NHTSA ID NUMBER: 11230013**
  Summary of Complaint: "TWICE NOW UNDER 5400 MILES, WHILE DEPRESSING GAS PEDDLE TO PASS ON AN INTERSTATE AT AROUND 70 MPH, THE CAR TOTALLY LOSES POWER AND ENGINE LIGHT COMES ON LEAVING US IN A VERY UNSAFE POSITION IN THE FAST LANE OF TRAVEL. WE BARELY AVOIDED COLLISIONS MAKING IT TO THE SHOULDER. AFTER RESTARTING THE CAR, THE ENGINE LIGHT IS OFF AND CAR APPEARS TO OPERATED NORMALLY AGAIN. ACURA COULD NOT FIND ANY CODES IN CPU AND TOLD US TO BRING IT BACK IF HAPPENS AGAIN. OPENED A TICKET ON ACURA'S WEB SITE - NO REPLY FOR NEARLY A WEEK NOW."

- **July 11, 2019 NHTSA ID NUMBER: 11231176**
  Summary of Complaint: "I JUST BOUGHT A NEW 2019 RDX ASPEC LAST FRIDAY, AND IT ONLY HAS ABOUT 500 MILES ON IT. I WAS DRIVING HOME TONIGHT AND WENT ABOUT 60MPH TO PASS A CAR AND MY CAR COMPLETELY LOST POWER. I TRIED PRESSING THE ACCELERATOR AND I HAD ABSOLUTELY NO RESPONSE. MY CHECK ENGINE LIGHT STARTED FLASHING. FORTUNATELY, THERE WAS A POLICE OFFICER WHO WAS ABLE TO GUIDE ME TO THE SHOULDER. I RESTARTED THE CAR AND THE ENGINE LIGHT WAS GONE AND I WAS ABLE TO DRIVE OFF. HOWEVER, THE CAR STILL DOES NOT SEEM TO HAVE A FULL THROTTLE RESPONSE AND THE RPM IS STAYING AT ABOUT 3500 IN NORMAL MODE. THE AUTO-DISABLE ENGINE FEATURE IS ALSO NOT WORKING ANYMORE. . . ."

- **September 26, 2019 NHTSA ID NUMBER: 11258285**
  Summary of Complaint: "WHILE DRIVING AT HIGH SPEED UPON ACCELERATION AT 70 MPH AUTO WENT DEAD. LOST ALL POWER. AFTER EIGHT MINUTES AUTO RESTARTED. . . . ONE MONTH AGO WHILE TURNING LEFT INTO TRAFFIC AT A MAJOR INTERSECTION, CAR BRAKES APPLIED AWAITING LEFT TURN AGAINST TRAFFIC. WENT TO ACCELERATE, CAR DASH LIGHTS WENT WILD ALL BEGIN BLING [SIC] RAPIDLY, DASH WENT BLACK, ABS BRAKES AND BRAKE PEDAL WENT TO FLOOR CAR WENT BY ITSELF INTO NEUTRAL. TOOK OVER 8 MINUTES TO RESTART. . . . THE VEHICLE HAS BEEN

IN THE ACURA SHOP MINIMALLY 15 TO 20 TIMES OVER 24 MONTHS TO NO AVAIL."

- **October 31, 2019 NHTSA ID NUMBER: 11277312**
  Summary of Complaint:  "THE CONTACT OWNS A 2020 ACURA RDX. WHILE THE CONTACT WAS PASSING A VEHICLE ACCELERATING AT 45 MPH, THE VEHICLE SUDDENLY LOST POWER AND THE CHECK ENGINE INDICATOR FLASHED. THE VEHICLE WENT INTO LIMP MODE AND SLOWED DOWN TO ONLY 10 MPH.  .  .  . THE SAME FAILURE OCCURRED RANDOMLY ON AN EARLIER MODEL VEHICLE. . . ."

- **December 2, 2019 NHTSA ID NUMBER: 11286445**
  Summary of Complaint: "TRAVELING ON HIGHWAY AT ~65 MPH, PRESSED ACCELERATOR TO PASS CAR AND VEHICLE WOULD NOT SPEED UP...FELT LIKE THE CAR WAS IN NEUTRAL. AFTER ABOUT 7 TO 10 SECONDS THE TRANSMISSION FINALLY KICKED IN AND THE CAR ACCELERATED. IF THIS HAPPENED ON A 2 LANE ROAD THE LACK OF TRANSMISSION DELIVERING POWER TO WHEELS COULD HAVE RESULTED IN A HEAD ON COLLISION. SERVICE APT SCHEDULED WITH ACURA DEALERSHIP WHERE PURCHASED AND WAS TOLD THEY COULD FIND NO 'CODES' OR ALERTS IN CARS COMPUTER AND THAT THEY FOUND NOTHING WRONG. . . ."

- **December 28, 2019 NHTSA ID NUMBER: 11291765**
  Summary of Complaint: "WE TURNED ONTO THE ON-RAMP OF I40 WEST IN ARKANSAS AT EXIT 58 HEADING WEST. I ACCELERATED TO GET UP TO SPEED TO MERGE ONTO THE HIGHWAY. WHEN I REACHED 70MPH THE CAR STOPPED ACCELERATION AND VERY RAPIDLY SLOWED TO 20MPH IN FRONT OF MULTIPLE CARS AND SEMI TRUCKS. I WAS LUCKY TO HAVE BEEN MISSED BY THE TRAFFIC BEHIND US AND WAS ABLE TO GET TO THE RIGHT SHOULDER. THE CAR WOULD NOT ACCELERATE PAST 10-20MPH. WE LIMPED TO THE NEXT EXIT AND FOUND A PARKING LOT. I TURNED THE CAR OFF AND BACK ON AND IT SEEMED TO BE WORKING CORRECTLY AGAIN. MY ENTIRE FAMILY COULD HAVE EASILY BEEN KILLED! DURING THE INCIDENT THE CHECK ENGINE LIGHT CAME ON AND REMAINED ON UNTIL

TURNING THE CAR OFF AND BACK ON."

- **January 13, 2020 NHTSA ID NUMBER: 11299118**
  Summary of Complaint: "MY BRAND NEW 2019 ACURA RDX THAT HAD 9200 MILES ON IT SHUT DOWN ON ME ON THE FREEWAY. IT WAS RAINING AND I PULLED OUT TO PASS, GOING ABOUT 75 MPH, AND IT WENT INTO WHAT I NOW KNOW IS LIMP MODE AND THE ENGINE LIGHT FLASHED ON AND OFF AND THE ENGINE WAS MAKING A DIFFERENT SOUND THAN NORMAL. I HAD SOMEONE TAILGATING ME, SO I AM LUCKY IT DIDN'T CAUSE AN ACCIDENT. GOT PULLED OVER AND CALLED THE DEALERSHIP AND THEY SAID IT NEEDED TO COME IN. THEY SPECULATE RAINDROPS GOT ON THE ENGINE FILTER (FORGET THE NAME) AND THE CAR THOUGHT IT WAS MALFUNCTIONING AND SHUT DOWN. . . . THIS IS A SAFETY ISSUE. I COULD HAVE BEEN ON A TWO-LANE PASSING AND COULDN'T GET BACK IN WHEN IT SHUT DOWN BEFORE AN ONCOMING CAR! SO I CANT DRIVE IT IN THE RAIN OR PASS NOW? THE DEALERSHIP HAD ONE OTHER RDX DO THE SAME THING AND IM READING SEVERAL ONLINE. I FEEL LIKE ITS RUSSIAN ROULETTE. DO I JUST HAVE A LEMON OR IS IT A DESIGN FLAW? IM SCARED! THE CAR IS STILL AT THE DEALERSHIP, BUT THERE'S NOTHING THAT CAN BE DONE BECAUSE EVERYTHING CHECKS OUT. THEY DON'T HONESTLY KNOW WHAT TO DO, SO THE POSSIBILITY OF BEING STRANDED OR MISSING A FLIGHT OR BEING INJURED OR KILLED IS NOT OFF THE TABLE! THEY KNOW THEY HAVE A PROBLEM BUT NOT MAKING IT PUBLIC KNOWLEDGE. IT'S A BRAND NEW DESIGN SO THERE MUST BE A FLAW.

- **January 25, 2020 NHTSA ID NUMBER: 11301812**
  Summary of Complaint: "WHILE DRIVING MY 2019 ACURA RDX I ATTEMPTED TO PASS A SLOWER MOVING VEHICLE. DURING ACCELERATION MY ENGINE LIGHT STARTED FLASHING AND SIMULTANEOUSLY THE VEHICLE LOST ALL POWER TO THE ENGINE. THIS PREVENTED ME FROM PASSING AND FORCED ME TO FALL BACK IN BEHIND THE VEHICLE I WAS PASSING. THIS WAS EXTREMELY DANGEROUS AND COULD HAVE HAD CATASTROPHIC RESULTS IF ANOTHER VEHICLE WAS APPROACHING. . . . "

- **January 30, 2020 NHTSA ID NUMBER: 11303032**
  Summary of Complaint: "I DRIVE A 2020 ACURA RDX HAVING 1,840 MILES. WHILE DRIVING ON THE HIGHWAY ON TWO SEPARATE OCCASIONS (APPROXIMATELY SEVERAL MONTHS APART), MY CAR HAD SUDDENLY DECELERATED. MY FOOT WAS NOT ON THE BREAK AT ALL. THE CAR WOULD NOT ACCELERATE WHEN APPLYING MY FOOT ON THE ACCELERATOR. . . . I BROUGHT THE CAR IN TO THE DEALERSHIP FOR SERVICE. THEY COULD NOT FIND OR DUPLICATE THE PROBLEM RELATED TO MY EXPERIENCES."

- **May 3, 2020 NHTSA ID NUMBER: 11323102**
  Summary of Complaint: "WHILE DRIVING AT APPROX. 75MPH ONE RAINY EVENING THE ENGINE LOST POWER, AND WOULD NOT MAINTAIN SPEED. AFTER MITIGATING ONCOMING TRAFFIC FROM BEHIND I WAS ABLE TO GET OVER 3 LANES TO THE SHOULDER AND TURN THE VEHICLE OFF. AFTER RESTARTING THE IGNITION, THE VEHICLE RESUMED WITH NORMAL POWER."

39.     In addition to the NHTSA website, a review of other websites and forums such as consumeraffairs.com, acurazine.com and carcomplaints.com reveal additional drivers who have experienced the Defect and were advised by their local dealerships that there was nothing wrong with the Vehicles.

40.     The foregoing establishes that Defendant knew, or should have known, that the Affected Vehicles suffered from the Defect at the time they were sold or leased to Plaintiffs and the Class. They also knew or should have known that the Defect could cause injury to drivers, passengers and others. Nevertheless, no warnings or instructions about the Defect are found in Defendant's owner's guides or manuals or on Acura's website. And notwithstanding Defendant's wealth of knowledge concerning the Defect and its clear safety implications, other than a single notification sent in 2015 to owners of the 2016 Acura MDX which advised of the need for a software update – which Plaintiffs are informed and believe did not solve the problem – Defendant failed to take action to notify owners and

consumers of the Defect or take adequate steps to resolve it.

41.     In fact, Defendant has made no efforts to make purchasers and lessees aware of the Defect. Instead, Defendant has and continue to suppress and conceal the Defect by marketing the Affected Vehicles as safe and reliable. Plaintiffs and the other Class Members reasonably relied on Defendant's representations and warranties regarding the safety and reliability of their Vehicles, including the representation that the Vehicles contained no known defects at the time of sale. As a result, consumers continue to purchase and operate their Affected Vehicles and continue to experience dangerous driving experiences due to the Defect.

42.     Information regarding the Defect was, and is, material to a reasonable consumer in making a decision to purchase or use such a Vehicle. Plaintiffs and Class Members were denied this information. Plaintiffs would not have purchased the Vehicles or, in the alternative, would have paid much less to purchase their Vehicles had they known of the safety hazard posed by the Defect.

**The Statutes of Limitations Have Been Tolled**

43.     Defendant is estopped from asserting the defense of statute of limitations as to any of the claims asserted herein because (a) Defendant's actions of affirmative fraud, deception, or concealment (intentional or unintentional) of material facts caused Plaintiffs and the Class to relax their vigilance or deviate from inquiry; (b) Plaintiffs and the Class were unaware of the Defect; and (c) Plaintiffs and the Class were unable to undertake any action to accomplish the benefits sought herein given, as a results of Defendant's deception and the latent nature of the Defect.

44.     Defendant's intentional delay and withholding of information regarding the Defect from Plaintiffs and the Class, have caused any exclusive or limited remedies available to fail of their essential purposes to the extent that they prevented Plaintiffs and Class Members from making claims during the limitations period.

1

**CLASS ALLEGATIONS**

2    45.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs

3    seek certification of a National Class defined as follows:

4
5
>All purchasers or lessees of 2016-2020 Acura MDX or a
>2019-2020 Acura RDX.

6    and certification of the following Sub-Classes:

7
8
9
10
>California Sub-Class: All purchasers or lessees of a 2016-
>2020 Acura MDX or a 2019-2020 Acura RDX who reside
>in or purchased or leased their Affected Vehicles in the
>State of California.

11
12
13
>Colorado Sub-Class: All purchasers or lessees of a 2016-
>2020 Acura MDX or a 2019-2020 Acura RDX who reside
>in or purchased or leased their Affected Vehicles in the
>State of Colorado.

14
15
16
>Maryland Sub-Class: All purchasers or lessees of a 2016-
>2020 Acura MDX or a 2019-2020 Acura RDX who reside
>in or purchased or leased their Affected Vehicles in the
>State of Maryland.

17
18
19
20
>Wisconsin Sub-Class: All purchasers or lessees of a 2016-
>2020 Acura MDX or a 2019-2020 Acura RDX who reside
>in or purchased or leased their Affected Vehicles in the
>State of Wisconsin.

21    46.    This action has been brought and may properly be maintained and

22    certified as a Class action because:

23
24
25
26
27
28
>(a)    Numerosity: Although the exact number of Class Members currently is
>uncertain, the Class consists of a sufficiently large group of individuals
>such that it is impractical to join all members of the Class before the
>Court as individual plaintiffs. Plaintiffs are informed and believe that
>the identity of Class Members  is readily ascertainable from various
>sources including the examination of Honda's records and/or via
>notice by publication;

(b)  Commonality: The questions of law or fact common to the Class are substantially similar and predominate over those questions affecting only specific members of the Class. The predominating common questions included, without limitation:

i.   Whether the Affected Vehicles suffer from the Defect;

ii.  Whether the Defect constitutes an unreasonable safety risk;

iii. Whether Defendant knew or should have known of the Defect;

iv.  Whether Defendant knowingly failed to disclose and warn U.S. consumers of the Defect;

v.   Whether Defendant had a duty to disclose the Defect to U.S. consumers;

vi.  Whether the Affected Vehicles have suffered diminution of value as a result of the Defect;

vii. Whether Defendant's marketing of the Affected Vehicles was likely to deceive or mislead consumers;

viii. Whether a reasonable consumer likely would be misled by Defendant's conduct;

ix.  Whether Defendant engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices by failing to disclose the Defect and/or misrepresenting the safety of the Affected Vehicles;

x.   Whether Defendant's conduct as alleged herein breached applicable warranties.

(c)  The Class is united by a community of interest in obtaining appropriate equitable relief including injunctive relief, recall of the Affected Vehicles, restitution, damages, and other available relief designed to redress the wrongful conduct of Defendant;

(d)  Typicality: Plaintiffs are members of the Class, and their claims are typical of the Class. Plaintiffs and the Class Members are or were

CLASS ACTION COMPLAINT                    20

owners or lessors of the Affected Vehicles and have been damaged by
Defendant's conduct as alleged herein;

(e)  Adequate Representation: Named Plaintiffs will fairly and adequately
represent the claims of the Class, and protect the interests of the Class
without exercising personal interest or otherwise acting in a manner
inconsistent with the best interests of the Class generally. Named
Plaintiffs have retained attorneys experienced in the litigation of Class
and representative claims and in the area of consumer protection
litigation who have agreed to and will responsibly and vigorously
advocate on behalf of the Class as a whole;

(f)  Superiority and Predominance: The Class action procedure is superior
to other methods of adjudication, and specifically designed to result in
the fair, uniform and efficient adjudication of the claims presented by
this complaint. This Class action will facilitate judicial economy and
preclude the undue financial, administrative and procedural burdens
which would necessarily result from a multiplicity of individual
actions. Without Class certification, the prosecution of separate
consumer actions by individual members of the Class would be
impracticable and financially difficult, and create a risk of repetitive,
inconsistent and varying adjudications. This would have the effect of
establishing incompatible standards of conduct for Defendant,
discouraging the prosecution of meritorious but small claims, and/or
result in adjudications which would be dispositive of the interests of
other Class Members not parties to the adjudication, or otherwise
substantially impair the ability of Class Members to protect their rights
and interests.

**FIRST CAUSE OF ACTION**
**(Fraud and Concealment)**
**(On behalf of the Nationwide Class)**

47.  Plaintiffs reallege and incorporate by reference all preceding
allegations as though fully set forth herein.

48.  Plaintiffs brings this cause of action against Defendant on behalf of
themselves and the Nationwide Class.

49.  In marketing, advertising, and selling the Affected Vehicles, and in
otherwise warranting the quality and safety of said Vehicles, Defendant

affirmatively misrepresented that the Affected Vehicles were safe and free from defects, and omitted to disclose the Defect. Defendant's affirmative representations regarding the quality and safety of said Vehicles created a duty for Defendant to disclose the information they had regarding the safety Defect.

50.     Defendant's failure to disclose the Defect was material. In particular, Defendant's omission concerned material safety facts that were essential to Plaintiffs and Class Members' decisions whether to purchase the Affected Vehicles.

51.     Defendant was under an affirmative and positive duty to disclose the Defect because of the relationship between the parties, the presence of the Defect in the Affected Vehicles, which constitutes a material safety defect, Defendant's superior knowledge of their Vehicles, Defendant's incomplete and misleading disclosures about the quality, merchantability and safety of the Affected Vehicles, and the inequality of bargaining power and knowledge between Defendant on the one hand and Plaintiff and Class Members, on the other.

52.     By and through such omissions, Defendants intended to induce Plaintiffs and Class Members to detrimentally rely on the material safety omissions.

53.     The fact and nature of the Defect was peculiarly within Defendant's knowledge; could not have been known to Plaintiffs; and was material to Plaintiffs, the Class and reasonable consumers such that Plaintiffs and the Class were justified in assuming its nonexistence in making the decision to purchase or lease and to continue to operate the Affected Vehicles. Under both express and implied warranties, Defendant owed a duty to Plaintiffs and Class Members to inform them of the nature of the defect and Defendant's responsibility for it.

54.     Defendant has, and continues to, conceal the Defect and Defendant's responsibility for it from vehicle owners, dealers and prospective vehicle purchasers.

55.     When Defendant learned that any of their previous representations regarding the safety of the Affected Vehicles were false, they had a duty to correct

those representations and disclose their knowledge of the Defect.

56.     Plaintiffs and the Class detrimentally relied upon Defendant's affirmative misrepresentations regarding the quality, merchantability and safety of the Affected Vehicles in making the decision to purchase or lease, and to continue to operate the Affected Vehicles.

57.     Plaintiffs and the Class reasonably and justifiably relied upon Defendant's omissions.

58.     Defendant's fraudulent concealment caused or proximately caused damages to Plaintiffs and Class Members.

59.     Defendant's fraudulent concealment also operates to equitably toll the limitations period applicable to all causes of action asserted by Plaintiff and Class Members herein. This is especially true since the Defect is a material safety issue.

60.     Defendant's fraud was intentional, reckless, in conscious disregard of the rights of Plaintiffs and the Class, and designed to maximize Defendant's profits even though Defendant knew that it would cause damages to Plaintiffs and Class Members, justifying an award of punitive damages.

61.     Plaintiffs and the Class are entitled to compensatory and other damages including punitive and exemplary damages, equitable relief, costs and expenses, fees, and other relief which the court concludes, in exercise of its jurisdiction, is appropriate.

**SECOND CAUSE OF ACTION**
**(Breach of Express Warranty – Magnusson-Moss Warranty Act,**
**15 U.S.C. § 2301 *et seq.*)**
**(On behalf of the Nationwide Class)**

62.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

63.     Plaintiffs brings this cause of action against Defendant on behalf of themselves and the Nationwide Class.

64.     The Affected Vehicles are a "consumer product" within the meaning

1   of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

2        65.    Plaintiff and Class Members are "consumers" within the meaning of

3   the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

4        66.    Defendant is a "supplier" and "warrantor" within the meaning of the

5   Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

6        67.    Defendant's express warranty is a "written warranty" within the

7   meaning of 15 U.S.C. § 2301(6).

8        68.    Defendant provides a 4-year, 50,000-mile New Vehicle Limited

9   Warranty, and a 6-year, 70,000-mile Powertrain Limited Warranty. Defendant

10  breached the express warranties by selling and leasing the Affected Vehicles with

11  the Defect, requiring repair or replacement within the warranty period, and refusing

12  to honor the express warranties by repairing or replacing, free of charge, the

13  components that contribute to the Defect.

14       69.    Defendant's breach of the express warranties has deprived Plaintiffs

15  and Class Members of the benefit of their bargain by failing to provide safe, reliable

16  vehicles.

17       70.    Defendant's refusal to provide an adequate repair or replacement of the

18  Vehicles violates 15 U.S.C. § 2304.

19       71.    Defendant has been afforded a reasonable opportunity to cure its

20  breach but has failed to do so.

21       72.    Plaintiffs and Class Members have suffered damages directly and

22  proximately caused by Defendant's breach of the express warranties and are

23  entitled to recover damages including actual damages, consequential damages,

24  specific performance, diminution in value, costs, attorneys' fees, and/or other relief

25  as appropriate.

26  \\\

27  \\\

28  \\\

**THIRD CAUSE OF ACTION**
**(Breach of Implied Warranty – Magnusson-Moss Warranty Act,**
**15 U.S.C. § 2301 *et seq.*)**
**(On behalf of the Nationwide Class)**

73.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

74.     Plaintiffs brings this cause of action against Defendant on behalf of themselves and the Nationwide Class.

75.     The Affected Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

76.     Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

77.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

78.     Defendant provided Plaintiffs and Class Members with an implied warranty that the Affected Vehicles are merchantable, pass without objection in the trade, are fit for the ordinary purposes for which they were sold, are adequately labeled, and conform to the promises and affirmations on the label.

79.     The Affected Vehicles are not merchantable because they are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Vehicles suffered from a latent Defect at the time of sale and/or lease. The Vehicles are thereafter not fit for their particular purpose of providing safe and reliable transportation. The Vehicles would not pass without objection in the trade, are not adequately labeled and do not comport the promises and affirmations on the label because the Vehicles, when driven under reasonable and ordinary conditions, spontaneously decelerate, shift into neutral, go into limp mode or stall.

80.     Defendant's breach of implied warranties has deprived Plaintiffs and Class Members of the benefit of their bargain by failing to provide them with Vehicles that is reliable and safe to drive.

81.     Defendant knew, or was reckless in not knowing, that its statements about the safety and reliability of the Affected Vehicles were false, of the material omissions concerning the standard, quality or grade of the Affected Vehicles and the presence of the Defect and associated safety risk.

82.     Defendant has been afforded a reasonable opportunity to cure their breach, but have failed to do so.

83.     As a direct and proximate cause of Defendant's breach of implied warranties, Plaintiffs and Class Members sustained and incurred damages and other losses in an amount to be determined at trial.

84.     Plaintiffs and Class Members have suffered damages directly and proximately caused by Defendant's breach of the implied warranties and are entitled to recover damages including actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

### FOURTH CAUSE OF ACTION
### (Unjust Enrichment and Restitution)
### (On behalf of the Nationwide Class)

85.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

86.     Plaintiffs brings this cause of action against Defendant on behalf of themselves and the Nationwide Class.

87.     Defendant has been unjustly enriched by, among other things, receipt of the difference in value between the amount paid for the Affected Vehicles and their actual fair market value and by receipt of money for parts and repairs.

88.     Because of this unjust enrichment, Defendant should be disgorged of amounts wrongfully retained and/or required to make restitution to Plaintiffs and Class Members of benefits received, retained or appropriated.

89.     Defendant has and continues to retain, hold and use money to which Plaintiffs are lawfully entitled, which but for Defendant's violation of law and

equity, would have been retained by or delivered to and used for the benefit of Plaintiffs and the Class.

90.    Plaintiffs and the Class seek restitution under the principles of quasi-contract and/or equity. Plaintiffs further seek imposition of a constructive trust over, and restitution through disgorgement of, Defendant's unlawful, unjust, and ill-gotten gains, so that they may be allocated and distributed equitably by the Court for the benefit of Plaintiffs and Class Members.

**FIFTH CAUSE OF ACTION**
**(Violation of the California Consumers Legal Remedies Act,**
**Cal. Civ. Code § 1750, *et seq*.)**
**(On behalf of the Nationwide Class)**

91.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

92.    Plaintiffs brings this cause of action against Defendant on behalf of themselves and on behalf of the Nationwide Class.

93.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ("CLRA") is a comprehensive statutory scheme that prohibits deceptive practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

94.    Defendant is a "person" as defined by California Civil Code § 1761(c).

95.    Plaintiffs and members of the Class are "consumers" within the meaning of California Civil Code § 1761(d) who purchased the Affected Vehicles primarily for personal, family or household use.

96.    Plaintiffs have standing to pursue this claim as they have suffered injury in fact and has lost money as a result of Defendant's actions. Defendant has violated the CLRA by engaging in unlawful, unfair and deceptive practices as defined in Civil Code § 1770 with respect to the products and services provided to Plaintiffs and the National Class, including but not limited to the following:

(a)    Representing that goods or services have sponsorship, approval,

characteristics, ingredients, uses, benefits, or quantities that they do not have Civil Code §1770(a)(5);

    (b)   Representing that goods or services are of a particular standard, quality or trade when they are of another Civil Code §1770(a)(7);

    (c)   Advertising goods or services with intent not to sell them as advertised Civil Code §1770(a)(9); and

    (d)   Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not. Civil Code §1770(a)(16).

97.    Plaintiffs, individually and on behalf of the Nationwide Class, seek an order enjoining the acts and practices described above, attorneys' fees, and costs under the CLRA.

98.    Plaintiffs Abel, Ciula, Floyd, Hartzell and Williams gave notice in accordance with Cal. Civil Code section 1782 on June 1, 2020, via certified mail, return receipt requested, to Defendant. A copy of this notice is attached hereto as Exhibit A. If Defendant has not remedied the problem after 30 days have passed, Plaintiffs will amend this complaint to seek damages under the CLRA.

**SIXTH CAUSE OF ACTION**
**(Violation of California Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200, *et seq.*)**
**(On behalf of the Nationwide Class)**

99.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

100.    Plaintiffs brings this cause of action against Defendant on behalf of themselves, and the Nationwide Class.

101.    California Business & Professions Code § 17200 *et seq.* ("UCL") precludes unfair competition, *i.e.*, the employment of any unlawful, unfair or fraudulent business acts or practices. This prohibition extends to any act, omission

1    or conduct or pattern of activity engaged in within California which affects the

2    rights of consumers within the State of California and elsewhere.

3        102.   Defendant has violated Cal. Bus. & Prof. Code §§ 17200 et seq. by

4    engaging in unlawful, unfair, or fraudulent business acts and practices and unfair,

5    deceptive, untrue, or misleading advertising that constitute acts of "unfair

6    competition" as defined in Cal. Bus. & Prof. Code § 17200 with respect to the

7    products provided to the Plaintiffs and the Class, including but not limited to the

8    following:

9            (a)    Engaging in deceptive acts and practices that meet the

10                  requirements to state a claim under the "fraudulent" prong of the

11                  UCL because Defendant's conduct constitutes a cause of action

12                  for fraudulent omission and fraudulent concealment. Here,

13                  Defendant knew about the Defect and its safety implications yet

14                  failed to remedy the Defect or disclose the Defect to consumers.

15                  In addition, Defendant actively and knowingly concealed it by

16                  continuing to manufacture and distribute the cars with the

17                  Defect and advertising the Affected Vehicles as safe and

18                  reliable. The undisclosed and concealed facts regarding the

19                  Defect are material because the Defect poses a significant safety

20                  hazard that Defendant was under an affirmative obligation to

21                  disclose.

22           (b)    Engaging in deceptive acts and practices that meet the

23                  requirements to state a claim under the "unfair" prong of the

24                  UCL because Defendant failed to disclose the Defect to

25                  Plaintiffs and the Class. In marketing and selling the Affected

26                  Vehicles, and in otherwise causing the Affected Vehicles to be

27                  placed into and maintained in the stream of commerce for use by

28                  consumers in the United States without disclosing the Defect

CLASS ACTION COMPLAINT          29

1    and the serious safety hazard the Vehicles pose as a result of the

2    Defect, and in continuing to conceal critical safety information

3    regarding the dangers associated with the use of the Affected

4    Vehicles, Defendant made available for consumer use a

5    dangerous and patently unsafe product which is not useable for

6    its intended purpose. These unfair acts and practices were

7    immoral unethical, oppressive, unscrupulous, unconscionable,

8    and/or substantially injurious to Plaintiffs and Class Members.

9    (c)   Engaging in deceptive acts and practices that meet the

10    requirements to state a claim under the "unlawful" prong of the

11    UCL by, among other things, violating Cal. Civ. Code §§ 1750,

12    *et seq*., the Magnuson-Moss Warranty Act, and the Song-

13    Beverly Consumer Warranty Act.

14    103.   Defendant has engaged in, and continues to engage in unfair, unlawful,

15    and deceptive trade practices as outlined herein.

16    104.   As a direct and proximate result of Defendant's unfair and unlawful

17    practices and acts, Plaintiffs and Class Members were injured and lost money or

18    property, including but not limited to the purchase of the Affected Vehicles, or the

19    diminished value of the Affected Vehicles.

20    105.   Plaintiffs and Class Members seek relief under Cal. Bus. & Prof. Code

21    §§ 17200 *et seq*., including, but not limited to, restitution to Plaintiffs and Class

22    Members of money or property that Defendant may have acquired by means of

23    their deceptive, unlawful, and unfair business practices, restitutionary disgorgement

24    of all profits accruing to Defendant because of their unlawful and unfair business

25    practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civil

26    Proc. §1021.5), and injunctive or other equitable relief.

27    \\\

28    \\\

CLASS ACTION COMPLAINT          30

**SEVENTH CAUSE OF ACTION**
**(Violation of California False Advertising Law,**
**Cal. Bus. & Prof. Code § 17500, *et seq*.)**
**(On behalf of the Nationwide Class)**

106.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

107.   Plaintiffs brings this cause of action against Defendant on behalf of themselves, the Nationwide Class.

108.   Defendant, Plaintiffs and the Class Members are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

109.   The California False Advertising Law ("California FAL") prohibits false advertising. Cal. Bus. & Prof. Code § 17500.

110.   In the course of its business, Honda, through its agents, employees and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety and performance of the Affected Vehicles as detailed herein.

111.   Specifically, by misrepresenting the Affected Vehicles as safe and/or free from defects and by failing to disclose and actively concealing the dangers and risk posed by the Affected Vehicles and/or the Defect, Defendant engaged in untrue and misleading advertising prohibited by California Bus. & Prof. Code § 17500.

112.   Defendant made or caused to be made and disseminated advertising, marketing and other publications containing numerous statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to the Defendant, to be untrue and misleading to consumers.

113.   Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and

1  were likely to and did in fact deceive reasonable consumers, including Plaintiffs

2  and the Class Members, about the true safety and reliability of the Affected

3  Vehicles.

4      114.   Defendant's concealment of the Defect was material to Plaintiffs and

5  the Class Members, as Defendant intended. Defendant had an ongoing duty to

6  consumers to refrain from unfair or deceptive practices under the California FAL in

7  the course of its business, including a duty to disclose all material facts concerning

8  the Defect.  Had they known the truth, Plaintiffs and the Class Members would not

9  have purchased or leased the Affected Vehicles, or would have paid significantly

10  less for them.

11     115.   Plaintiffs and the Class Members have suffered ascertainable losses

12  and damages as a direct and proximate result of Defendant's concealment,

13  misrepresentation and/or failure to disclose material information.

14     116.   Defendant's violations present a continuing risk to Plaintiffs, Class

15  Members and the general public.

16     117.   Plaintiffs and Class Members seek restitution to Plaintiffs and Class

17  Members of money or property that Defendant may have acquired by means of

18  their false advertising, including restitutionary disgorgement, injunctive or other

19  equitable relief and any other just and proper relief available under the false

20  advertising provisions of the California FAL.

21

22                      **EIGHTH CAUSE OF ACTION**
                       **(Breach of Express Warranty)**
23                  **(On behalf of the California Sub-Class)**

24     118.   Plaintiffs reallege and incorporate by reference all preceding

25  allegations as though fully set forth herein.

26     119.   Plaintiffs brings this cause of action against Defendant on behalf of

27  themselves and the Nationwide Class.

28     120.   Defendant provided a New Vehicle Limited Warranty that covers the

Affected Vehicles for 4 years or 50,000 miles and a Powertrain Limited Warranty for 6 years or 70,000 miles that covered the Defect to Plaintiffs and all members of the Class.

121.   At the time of purchase and delivery, and within an applicable warranty period, Plaintiffs' and Class Members' Affected Vehicles suffered from an inherent Defect. The Defect was present from the date it left the manufacturer and existed each time the Affected Vehicles were driven—although the dangerous manifestation of the Defect remained latent and hidden until Class Members were confronted with an unexpected deceleration of speed or shut down of their Vehicle. The Defect is still present in all Affected Vehicles.

122.   Defendant was aware of the Defect before and at the time it commenced to sell the Affected Vehicles to consumers, including Class Members, and the Defect complained of herein occurred within the original warranty period.

123.   Plaintiffs and Class Members have suffered damages directly and proximately caused by Defendant's breach of the express warranties and are entitled to recover damages including actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

**NINTH CAUSE OF ACTION**
**(Breach of Implied Warranty,**
**California Civil Code §§ 1791.1, 1792 *et seq.*)**
**(On behalf of the California Sub-Class)**

124.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

125.   Plaintiffs brings this cause of action against Defendant on behalf of themselves, and the California Sub-Class.

126.   Under the Song-Beverly Consumer Warranty Act, California Civil Code §§ 1791.1., 1792 *et seq.*, there exists an implied warranty that the Affected Vehicles, including their parts and components, are merchantable, pass without

objection in the trade, are fit for the ordinary purposes for which they were sold, are adequately labeled, and conform to the promises and affirmations on the label.

127.   Defendant breached these implied warranties in failing to market and sell a product which was fit for its intended use as a fit, merchantable, and otherwise reasonably safe to use as represented by Defendant's marketing, advertising and placing the Affected Vehicles in the stream of commerce for sale to consumers.

128.   The Defect, which causes the Affected Vehicles to spontaneously and abruptly decelerate, stall, go into limp mode, shift into neutral or stall, often while the car is moving at high speeds, renders the Affected Vehicles unsafe for their intended and expected purposes.

129.   The implied warranty was material to Plaintiffs and the Class, who relied upon the reputation of Defendant and its cars, and its marketing and other representations regarding the safety of its vehicles to purchase and continue to drive Affected Vehicles. Defendant knew or was reckless in not knowing that their statements about the safety and reliability of the Affected Vehicles were false, of the material omissions concerning the standard, quality or grade of the Affected Vehicles and the presence of the Defect and associated safety risk.

130.   Defendant has been afforded a reasonable opportunity to cure their breach, but have failed to do so.

131.   Had consumers been advised of the Defect and the compromised safety of the Affected Vehicles, Plaintiffs and the Class would not have purchased the Vehicles or would have paid less for them.

132.   Plaintiffs and Class Members have suffered damages directly and proximately caused by Defendant's breach of the implied warranties and are entitled to recover damages including actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

**TENTH CAUSE OF ACTION**
**(Breach of Express Warranty,**
**Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-210)**
**(On behalf of the Colorado Sub-Class)**

133.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

134.   Plaintiff Ciula brings this cause of action against Defendant on behalf of herself and the Colorado Sub-Class.

135.   Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and a "seller" of motor vehicles under § 4-2-103(1)(d).

136.   With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

137.   All Colorado Sub-Class members who purchased Affected Vehicles are "buyers" within the meaning of Colo. Rev. Stat. § 4-2-103(1)(a).

138.   All Colorado Sub-Class members who leased Affected Vehicles in Colorado are "lessees" within the meaning of Colo. Rev. Stat. § 4-2.5-103(1)(p).

139.   The Affected Vehicles are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

140.   In connection with the purchase or lease of the Affected Vehicles, Defendant provided Plaintiff Ciula and the Colorado Sub-Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

141.   Defendant's warranties formed the basis of the bargain that was reached when Plaintiff Ciula and Colorado Sub-Class members unknowingly purchased or leased Affected Vehicles that came equipped with the Defect.

142.   Defendant's warranties formed the basis of the bargain that was reached when the Plaintiff Ciula and Colorado Sub-Class members unknowingly purchased or leased the Affected Vehicles that came equipped with the Defect.

143.   However, Defendant knew or should have known that the warranties were false and/or misleading. Specifically, Defendant was aware of the Defect in the Affected Vehicles, which made the Vehicles inherently defective and dangerous at the time that they were sold and leased to the Plaintiff Ciula and Colorado Sub-Class members.

144.   Plaintiff Ciula and Colorado Sub-Class members reasonably relied on Defendant's express warranties when purchasing or leasing their Affected Vehicles.

145.   Defendant knowingly breached its express warranties to repair defects in materials and workmanship by failing to repair the Defect in the Affected Vehicles. Honda also breached its express warranties by providing a product containing defects that were never disclosed to Plaintiff Ciula and the Colorado Sub-Class members.

146.   Plaintiff Ciula and the Colorado Sub-Class members have provided Honda with reasonable notice and opportunity to cure the breaches of its express warranties by way of the numerous NHTSA complaints filed against it. Additionally, a notice letter was sent on behalf of Plaintiff Ciula and the Colorado Sub-Class members to Honda on June 1, 2020.

147.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

148.   As a direct and proximate result of Honda's breach of its express warranties, Plaintiff Ciula and Colorado Sub-Class members have been damaged in an amount to be proven at trial.

\\\
\\\
\\\
\\\
\\\

**ELEVENTH CAUSE OF ACTION**
**(Breach of Implied Warranty of Merchantability,**
**Colo. Rev. Stat. §§ 4-2-314 and 4-2.5-212)**
**(On behalf of the Colorado Sub-Class)**

149.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

150.   Plaintiff Ciula brings this cause of action against Defendant on behalf of herself and the Colorado Sub-Class.

151.   A warranty that the Affected Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Colo. Rev. Stat. §§ 4-2-314 and 4-2.5-212.

152.   The Affected Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Affected Vehicles suffer from the Defect, which may cause sudden events of deceleration, stalling, going into limp mode, shifting in neutral or shutting down, rendering the Affected Vehicles inherently defective and dangerous.

153.   Honda is and was at all relevant times a "merchant" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and a "seller" of motor vehicles under § 4-2-103(1)(d).

154.    With respect to leases, Honda is and was at all relevant times a "lessor" of motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

155.   All Colorado Sub-Class members who purchased the Affected Vehicles in Colorado are "buyers" within the meaning of Colo. Rev. Stat. § 4-2-03(1)(a).

156.   All Colorado Sub-Class members who leased the Affected Vehicles in Colorado are "lessees" within the meaning of Colo. Rev. Stat. § 4-2.5-103(1)(p).

157.   The Affected Vehicles are and were at all relevant times "goods"

1   within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

2       158.   Plaintiff Ciula and the Colorado Sub-Class members have provided

3   Honda with reasonable notice and opportunity to cure the breaches of its express

4   warranties by way of the numerous NHTSA complaints filed against it.

5   Additionally, a notice letter was sent on behalf of Plaintiff Ciula and Colorado Sub-

6   Class members to Defendant on June 1, 2020.

7       159.   Alternatively, any opportunity to cure the breach is unnecessary and

8   futile.

9       160.   As a direct and proximate result of Defendant's breach of the implied

10  warranty of merchantability, Plaintiff Ciula and the Colorado Sub-Class members

11  have been damaged in an amount to be proven at trial.

12                        **TWELFTH CAUSE OF ACTION**
                  **(Violation of the Colorado Consumer Protection Act,**
13                     **Colo. Rev. Stat. § 6-1-101, *et seq.*)**
                        **(On behalf of the Colorado Sub-Class)**
14

15      161.   Plaintiffs reallege and incorporate by reference all preceding

16  allegations as though fully set forth herein.

17      162.   Plaintiff Ciula brings this cause of action against Defendant on behalf

18  of herself and the Colorado Sub-Class.

19      163.   Honda, Plaintiff Ciula and the Colorado Sub-Class members are

20  "persons" within the meaning of Colo. Rev. Stat. § 6-1-102(6).

21      164.   The Colorado Consumer Protection Act ("Colorado CPA") prohibits

22  unfair, unconscionable, and deceptive acts or practices in the course of the person's

23  business, vocation, or occupation. Colo. Rev. Stat. § 6-1-105.

24      165.   In the course of its business, Honda, through its agents, employees,

25  and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally

26  misrepresenting, omitting, concealing, and/or failing to disclose material facts

27  regarding the reliability, safety, and performance of the Affected Vehicles and/or

28  the Defect, as detailed above.

166.   Specifically, by misrepresenting the Affected Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Affected Vehicles and/or the Defect, Honda engaged in one or more of the following unfair or deceptive business practices prohibited by Colo. Rev. Stat. § 6-1-105:

     (a)   Representing that the Affected Vehicles and/or their components have  characteristics, uses, benefits, and qualities which they do not have;

     (b)   Making false representations about the approval or certification of the Affected Vehicles and/or their components;

     (c)   Making false representations regarding the characteristics, uses, and benefits of the Affected Vehicles and/or the components installed in them;

     (d)   Representing that the Affected Vehicles and/or their components are of a particular standard, quality, and grade when they are not;

     (e)   Advertising the Affected Vehicles and/or the defective components with the intent not to sell or lease them as advertised;

     (f)   Engaging in the other unconscionable, false, misleading, or deceptive acts or practices pertaining to the Affected Vehicles.

Colo. Rev. Stat. §§ 6-1-105(1)(b), (e), (g), (i), and (3).

167.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff Ciula and the Colorado Sub-Class members, about the true safety and reliability of the Affected Vehicles, the quality of the Affected Vehicles, and the true value of the Affected Vehicles.

168.   Honda's scheme and concealment of the Defect was material to

Plaintiff Ciula and the Colorado Sub-Class members, as Honda intended. Had they known the truth, Plaintiff Ciula and the Colorado Sub-Class members would not have purchased or leased the Affected Vehicles, or would have paid significantly less for them.

169.   Plaintiff Ciula and Colorado Sub-Class members had no way of discerning that Honda's representations were false and misleading, or otherwise learning the facts that Honda had concealed or failed to disclose. Plaintiff Ciula and the Colorado Sub-Class members did not, and could not, unravel Honda's deception on their own.

170.   Honda had an ongoing duty to Plaintiff Ciula and the Colorado Sub-Class members to refrain from unfair or deceptive practices under the Colorado CPA in the course of its business. Specifically, Honda owed Plaintiff Ciula and the Colorado Sub-Class members a duty to disclose all the material facts concerning the Defect in the Affected Vehicles because it possessed exclusive knowledge, it intentionally concealed the Defect from Plaintiff Ciula and the Colorado Sub-Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

171.   Plaintiff Ciula and the Colorado Sub-Class members suffered ascertainable losses and actual damages as a direct and proximate result of Honda's concealment, misrepresentations, and/or failure to disclose material information.

172.   Honda's violations present a continuing risk to Plaintiff Ciula and the Colorado Sub-Class members, as well as to the general public. Honda's unlawful acts and practices complained of herein affect the public interest.

173.   Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiff Ciula and the Colorado Sub-Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Colorado CPA.

\\\

**THIRTEENTH CAUSE OF ACTION**
**(Breach of Express Warranty,**
**Md. Code Com. Law 2-313 and 2A-210)**
**(On behalf of Maryland Sub-Class)**

174.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

175.   Plaintiffs Hartzell and Williams bring this cause of action against Defendant on behalf of themselves and the Maryland Sub-Class.

176.   Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under Md. Code. Com. Law §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

177.   With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under Md. Code. Com. Law § 2A-103(1)(p).

178.   All Maryland Sub-Class Members who purchased Affected Vehicles in Maryland are "buyers" within the meaning of Md. Code. Com. Law § 2-103(1)(a).

179.   All Maryland Sub-Class Members who leased Affected Vehicles in Maryland are "lessees" within the meaning of Md. Code. Com. Law § 2A-103(1)(n).

180.   The Affected Vehicles are and were at all relevant times "goods" within the meaning of Md. Code. Com. Law §§ 2-105(1) and 2A-103(1)(h).

181.   In connection with the purchase or lease of Affected Vehicles, Defendant provided Plaintiffs Hartzell and Williams and the Maryland Sub-Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

182.   Defendant's warranties formed the basis of the bargain that was reached when Plaintiffs Hartzell and Williams and the Maryland Sub-Class members unknowingly purchased or leased Affected Vehicles that came equipped with the Defect.

183.    However, Defendant knew or should have known that the warranties were false and/or misleading. Specifically, Defendant was aware of the Defect in the Affected Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs Hartzell and Williams and the Maryland Sub-Class members.

184.    Plaintiffs Hartzell and Williams and the Maryland Sub-Class members reasonably relied on the Defendant's express warranties when purchasing or leasing their Affected Vehicles.

185.    Defendant knowingly breached its express warranties to repair defects in materials and workmanship by failing to repair the Defect. Defendant also breached its express warranties by providing a product containing defects that were never disclosed to Plaintiffs Hartzell and Williams and the Maryland Sub-Class members.

186.    Plaintiffs Hartzell and Williams and the Maryland Sub-Class members have provided Defendant with reasonable notice and opportunity to cure the breaches of its express warranties by way of the numerous NHTSA complaints filed against it. Additionally, a notice letter was sent on behalf of Plaintiffs Hartzell and Williams and the Maryland Sub-Class members to Defendant on June 1, 2020.

187.    Alternatively, any opportunity to cure the breach is unnecessary and futile. As a direct and proximate result of Defendant's breach of its express warranties, Plaintiffs Hartzell and Williams and the Maryland Sub-Class members have been damaged in an amount to be proven at trial.

\\\

\\\

\\\

\\\

\\\

\\\

**FOURTEENTH CAUSE OF ACTION**
**(Breach of Implied Warranty of Merchantability,**
**Md. Code Com. Law §§ 2-314 and 2A-212)**
**(On behalf of the Maryland Sub-Class)**

188.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

189.   Plaintiffs Hartzell and Williams bring this cause of action against Defendant on behalf of themselves and the Maryland Sub-Class.

190.   A warranty that the Affected Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Md. Code Com. Law §§ 2-314 and 2A-212. The Affected Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Affected Vehicles suffer from the Defect, which may cause the Vehicle to hesitate, stall, shut down, go into limp mode, or decelerate instead of accelerate at the command of the driver depressing the gas pedal, rendering the Affected Vehicles inherently defective and dangerous.

191.   Defendant is and was at all relevant times a "merchant" with respect to motor vehicles Md. Code Com. Law §§ 2-104(1) and 2A-103(3), and a "seller" of motor vehicles under § 2-103(1)(d).

192.   With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under Md. Code. Com. Law § 2A-103(1)(p).

193.   All Maryland Sub-Class members who purchased Affected Vehicles in Maryland are "buyers" within the meaning of Md. Code. Com. Law § 2-103(1)(a).

194.   All Maryland Sub-Class members who leased Class Vehicles in Maryland are "lessees" within the meaning of Md. Code. Com. Law § 2A-103(1)(n).

1    195.   The Affected Vehicles are and were at all relevant times "goods"

2  within the meaning of Md. Code. Com. Law §§ 2-105(1) and 2A-103(1)(h).

3    196.   Plaintiffs Hartzell and Williams and the Maryland Sub-Class members

4  have provided Defendant with reasonable notice and opportunity to cure the

5  breaches of its implied warranties by way of the numerous NHTSA complaints

6  filed against it. Additionally, a notice letter was sent on behalf of Plaintiffs Hartzell

7  and Williams and the Maryland Sub-Class to Honda on June 1, 2020.

8    197.   Alternatively, any opportunity to cure the breach is unnecessary and

9  futile.

10   198.   As a direct and proximate result of Honda's breach of the implied

11  warranty of merchantability, Plaintiffs Hartzell and Williams and the Maryland

12  Sub-Class members have been damaged in an amount to be proven at trial.

13                        **FIFTEENTH CAUSE OF ACTION**
              **(Violation of the Maryland Consumer Protection Act,**
14              **Md. Code Com. Law § 13-101, *et seq.*)**
15                **(On behalf of the Maryland Sub-Class)**

16   199.   Plaintiffs reallege and incorporate by reference all preceding

17  allegations as though fully set forth herein.

18   200.   Plaintiffs Hartzell and Williams bring this cause of action against

19  Defendant on behalf of themselves and the Maryland Sub-Class.

20   201.   Defendant, Plaintiffs Hartzell and Williams and the Maryland Sub-

21  Class members are "persons" within the meaning of Md. Code Com. Law § 13-

22  101(h).

23   202.   Plaintiffs Hartzell and Williams and the Maryland Sub-Class members

24  are "consumers" within the meaning of Md. Code Com. Law § 13-101(c).

25   203.   The Affected Vehicles and the components installed in them are

26  "merchandise" within the meaning of Md. Code Com. Law § 13-101(f).

27   204.   The Maryland Consumer Protection Act ("Maryland CPA")

28  prohibits"[u]nfair, abusive, or deceptive trade practices[.]" Md. Code Com. Law §

13-301.

205.   In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Affected Vehicles or its components and detailed herein.

206.   Specifically, by misrepresenting the Affected Vehicles and/or the defective components installed in them as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Affected Vehicles and/or the Defect, Defendant engaged in one or more of the following unfair or deceptive business practices prohibited by Md. Code Com. Law § 13-303.

        (a)    Representing that the Affected Vehicles and/or the defective components installed in them have characteristics, uses, benefits, and qualities which they do not have;

        (b)    Representing that the Affected Vehicles and/or the defective components installed in them are of a particular standard, quality, and grade when they are not;

        (c)    Failing to state material facts about the Affected Vehicles and/or the Defect;

        (d)    Advertising the Affected Vehicles and/or the defective components installed in them with the intent not to sell or lease them as advertised;

        (e)    Otherwise engaging in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of material facts regarding the safety of the Affected Vehicles.

Md. Code Com. Law §§ 13-301(1), (2)(i), (2)(iv), (3), (5)(i), and (9)(i).

207.   Defendant's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs Hartzell and Williams and the Maryland Sub-Class members, about the true safety and reliability of Affected Vehicles, the quality of the Affected Vehicles, and the true value of the Affected Vehicles.

208.   Defendant's scheme and concealment of the Defect were material to Plaintiffs Hartzell and Williams and the Maryland Sub-Class members, as Defendant intended. Had they known the truth, Plaintiffs Hartzell and Williams and the Maryland Sub-Class members would not have purchased or leased the Affected Vehicles, or would have paid significantly less for them.

209.   Plaintiffs Hartzell and Williams and the Maryland Sub-Class members had no way of discerning that Honda's representations were false and misleading and/or otherwise learning the facts that Honda had concealed or failed to disclose. Plaintiffs Hartzell and Williams and the Maryland Sub-Class members did not, and could not, unravel Honda's deception on its own.

210.   Defendant had an ongoing duty to Plaintiff Hartzell and the Maryland Sub-Class members to refrain from unfair or deceptive practices under the Maryland CPA in the course of its business. Specifically, Defendant owed Plaintiffs Hartzell and Williams and the Maryland Sub-Class members a duty to disclose all the material facts concerning the Defect in the Affected Vehicles because they possessed exclusive knowledge, they intentionally concealed the Defect from Plaintiffs Hartzell and Williams and the Maryland Sub-Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

211.   Plaintiffs Hartzell and Williams and the Maryland Sub-Class members suffered ascertainable losses and actual damages as a direct and proximate result of

Defendant's concealment, misrepresentations, and/or failure to disclose material information.

212. Defendant's violations present a continuing risk to Plaintiffs Hartzell and Williams and the Maryland Sub-Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

213. Pursuant to Md. Code Com. Law § 13-408, Plaintiffs Hartzell and Williams and the and Maryland Sub-Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Maryland CPA.

**SIXTEENTH CAUSE OF ACTION**
**(Breach of Express Warranty,**
**Wis. Stat. §§ 402.313 and 411.210)**
**(On behalf of the Wisconsin Sub-Class)**

214. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

215. Plaintiff Abel brings this cause of action against Defendant on behalf of himself and the Wisconsin Sub-Class.

216. Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under Wis. Stat. §§ 402.104(3) and 411.103(1)(t), and a "sellers of motor vehicles under § 402.103(1)(d).

217. With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under Wis. Stat. § 411.103(1)(p).

218. All Wisconsin Sub-Class members who purchased Affected Vehicles in Wisconsin are "buyers" within the meaning of Wis. Stat. § 402.103(1)(a).

219. All Wisconsin Sub-Class members who leased Affected Vehicles in Wisconsin are "lessees" within the meaning of Wis. Stat. § 411.103(1)(n).

220. The Affected Vehicles are and were at all relevant times "goods" within the meaning of Wis. Stat. §§ 402.105(1)(c) and 411.103(1)(h).

221.   In connection with the purchase or lease of Affected Vehicles, the Defendant provided Plaintiff Abel and the Wisconsin Sub-Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

222.   Defendant's warranties formed the basis of the bargain that was reached when Plaintiff Abel and the Wisconsin Sub-Class members unknowingly purchased or leased Affected Vehicles that came equipped with the Defect.

223.   However, Defendant knew or should have known that the warranties were false and/or misleading. Specifically, Honda was aware of the Defect in the Affected Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiff Abel and the Wisconsin Sub-Class members.

224.   Plaintiff Abel and the Wisconsin Sub-Class members reasonably relied on the Defendant's express warranties when purchasing or leasing their Affected Vehicles.

225.   Defendant knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the Defect. Defendant also breached its express warranties by providing a product containing defects that were never disclosed to Plaintiff Abel and the Wisconsin Sub-Class members.

226.   Plaintiff Abel and the Wisconsin Sub-Class members have provided the Defendant with reasonable notice and opportunity to cure the breaches of its express warranties by way of the numerous NHTSA complaints filed against it. Additionally, a notice letter was sent on behalf of Plaintiff Abel and the Wisconsin Sub-Class members to Honda on June 1, 2020.

227.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

228.   As a direct and proximate result of the Defendant's breach of its express warranties, Plaintiff Abel and the Wisconsin Sub-Class members have been

1   damaged in an amount to be proven at trial.

2   ### SEVENTEENTH CAUSE OF ACTION
3   **(Breach of Implied Warranty of Merchantability,**
    **Wis. Stat. §§ 402.314 and 411.212)**
4   **(On behalf of the Wisconsin Sub-Class)**

5   229.   Plaintiffs reallege and incorporate by reference all preceding

6   allegations as though fully set forth herein.

7   230.   Plaintiff Abel brings this cause of action against Defendant on behalf

8   of himself and the Wisconsin Sub-Class.

9   231.   A warranty that the Affected Vehicles were in merchantable condition

10  and fit for the ordinary purpose for which such goods are used is implied by law

11  pursuant to Wis. Stat. §§ 402.314 and 411.212.

12  232.   The Affected Vehicles did not comply with the implied warranty of

13  merchantability because, at the time of sale and at all times thereafter, they were

14  defective and not in merchantable condition, would not pass without objection in

15  the trade, and were not fit for the ordinary purpose for which vehicles were used.

16  Specifically, the Affected Vehicles suffer from the Defect, which causes the

17  Vehicles to hesitate, stall, shut down, go into limp mode, or decelerate instead of

18  accelerate at the command of the driver depressing the gas pedal, rendering the

19  Affected Vehicles inherently defective and dangerous.

20  233.   Defendant is and was at all relevant times a "merchant" with respect to

21  motor vehicles under Wis. Stat. §§ 402.104(3) and 411.103(1)(t), and a "seller" of

22  motor vehicles under § 402.103(1)(d).

23  234.   With respect to leases, Defendant is and was at all relevant times a

24  "lessor" of motor vehicles under Wis. Stat. § 411.103(1)(p).

25  235.   All Wisconsin Sub-Class members who purchased the Affected

26  Vehicles in Wisconsin are "buyers" within the meaning of Wis. Stat.§

27  402.103(1)(a).

28  236.   All Wisconsin Sub-Class members who leased the Affected Vehicles

---

in Wisconsin are "lessees" within the meaning of Wis. Stat. § 411.103(1)(n).

237.   The Affected Vehicles were at all relevant times "goods" within the meaning of Wis. Stat. §§ 402.105(1)(c) and 411.103(1)(h).

238.   Plaintiff Abel and the Wisconsin Sub-Class members have provided Defendant with reasonable notice and opportunity to cure the breaches of its implied warranties by way of the numerous NHTSA complaints filed against it. Additionally, a notice letter was sent on behalf of Plaintiff Abel and the Wisconsin Sub-Class members to Honda on June 1, 2020.

239.   Alternatively, any opportunity to cure the breach is unnecessary and futile.

240.   As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff Abel and the Wisconsin Sub-Class members have been damaged in an amount to be proven at trial.

## EIGHTEENTH CAUSE OF ACTION
### (Violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*)
### (On behalf of the Wisconsin Sub-Class)

241.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

242.   Plaintiff Abel brings this cause of action on behalf of himself and the Wisconsin Sub-Class.

243.   Defendant is a "person, firm, corporation, or association" within the meaning of Wis. Stat. § 100.18(1).

244.   Plaintiff Abel and Wisconsin Sub-Class are members of "the public" within the meaning of Wis. Stat. § 100.18(1).

245.   The Affected Vehicles and the defective components installed in them are "merchandise" within the meaning of Wis. Stat. § 100.18(1).

246.   The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits any "assertion, representation or statement of fact which is untrue,

deceptive or misleading." Wis. Stat. § 100.18(1).

247.   In the course of their business, Defendant, through its agents, employees, and/or subsidiaries, violated the Wisconsin DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Affected Vehicles as detailed above.

248.   Specifically, by misrepresenting the Affected Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Affected Vehicles and/or the Defect, Defendant violated the DTPA by making assertions, representations and statements of fact which are untrue, deceptive or misleading, as prohibited by Wis. Stat. § 100.18(1).

249.   Defendant's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff Abel and the Wisconsin Sub-Class members, about the true safety and reliability of Affected Vehicles, the quality of the Affected Vehicles, and the true value of the Affected Vehicles.

250.   Defendant's misrepresentations and concealment of the Defect were material to Plaintiff Abel and the Wisconsin Sub-Class members, as Defendant intended. Had they known the truth, Plaintiff Abel and the Wisconsin Sub-Class members would not have purchased or leased the Affected Vehicles, or would have paid significantly less for them.

251.   Plaintiff Abel and the Wisconsin Sub-Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiff Abel and the Wisconsin Sub-Class members did not, and could not, unravel Defendant's deception on their own.

252.   Defendant had an ongoing duty to Plaintiff Abel and the Wisconsin Sub-Class members to refrain from unfair and deceptive practices under the Wisconsin DTPA in the course of their business. Specifically, Defendant owed Plaintiff Abel and the Wisconsin Sub-Class members a duty to disclose all the material facts concerning the Defect in the Affected Vehicles because it possessed exclusive knowledge, it intentionally concealed the Defect from Plaintiff Abel and the Wisconsin Sub-Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

253.   Plaintiff Abel and the Wisconsin Sub-Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

254.   Defendant's violations present a continuing risk to Plaintiff Abel and the Wisconsin Sub-Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

255.   Pursuant to Wis. Stat. § 100.18(11)(b)(2), Plaintiff Abel and the Wisconsin Sub-Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Wisconsin DTPA.

## RELIEF REQUESTED

256.   Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendant, as follows:

> (a)   An order certifying the proposed Class and Sub-Classes and designating Plaintiffs as the named representatives of the Classes and designating the undersigned as Class Counsel;

> (b)   An order requiring Defendant to cease and desist from engaging in the alleged wrongful conduct and to engage in a corrective advertising campaign, including compelling Defendant to issue a

1            voluntary recall for the Affected Vehicles and to remove, repair,

2            and/or replace the Affected Vehicles;

3    (c)   As to all applicable causes of action except for the Fifth Cause of

4            action under Cal. Civ. Code §§ 1750 *et seq.*, an award to Plaintiffs

5            and Class Members of compensatory, actual, exemplary, and

6            statutory damages, including interest, in an amount to be proven

7            at trial;

8    (d)   A declaration that Defendant must disgorge, for the benefit of

9            Plaintiffs and Class Members, all or part of the ill-gotten profits it

10          received from its deceptive and unfair business practices, or make

11          full restitution to Plaintiffs and Class Members;

12    (e)   An award of attorneys' fees and costs as allowed by law;

13    (f)   An award of pre-judgment and post-judgment interest, as allowed

14            by law;

15    (g)   Leave to amend the Complaint to conform to evidence produced

16            at trial; and

17    (h)   Such other relief as may be appropriate under the circumstances.

18                 **DEMAND FOR JURY TRIAL**

19      Plaintiffs, individually and on behalf of all others similarly situated, demand

20  a trial by jury of all issues in this action so triable.

21  DATED:  June 3, 2020        Respectfully submitted,

22

                        By:       /s/ Roman M. Silberfeld

23

24              Roman M. Silberfeld (SBN 62783)
                  rsilberfeld@robinskaplan.com

25              Jennifer W. Leland (SBN 185951)
                  jleland@robinskaplan.com

26              Glenn A. Danas (SBN 270317)
                   gdanas@robinskaplan.com

27              ROBINS KAPLAN LLP

28

2049 Century Park E., Suite 3400
Los Angeles, CA 90067
Telephone:   310 552 0130
Facsimile:    310 228 5800

Michael F. Ram (SBN 104805)
mram@robinskaplan.com
Marie N. Appel (SBN 187483)
mappel@robinskaplan.com
ROBINS KAPLAN LLP
2440 W. El Camino Real, Suite 100
Mountain View, CA 94040
Telephone:   650 784 4040
Facsimile:    650 784 4041

Samuel J. Strauss (*pro hac vice to be filed*)
Sam@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson Street, #201
Madison, WI 53703
Telephone:   608 237 1775
Facsimile:    608 509 4423

***Attorneys for Plaintiffs***

# EXHIBIT A

**ROBINS KAPLAN** LLP

2440 W. EL CAMINO REAL          650-784-4002 TEL
SUITE 100                       650-784-4041 FAX
MOUNTAIN VIEW, CA 94040         ROBINSKAPLAN.COM

MICHAEL F. RAM
650-784-4007  TEL
MRAM@ROBINSKAPLAN.COM

June 1, 2020

*By Certified Mail*
*Return Receipt Requested*

Shinji Aoyama
President & CEO, American Honda Motor Co., Inc.
1919 Torrance Blvd.
Torrance, CA 90501

Re:     *Tasha Williams, 2019 Acura RDX, Purchase date: August 2018*
        *Ewelina Ciula, 2019 Acura RDX, Purchase date: September 2018*
        *Daniel Abel, 2019 Acura RDX, Purchase date: October 2018*
        *Debra Hartzell, 2019 Acura RDX, Purchase date: November 2018*
        *Marguerite Floyd, 2016 Acura MDX, Purchase date: January 2017*

**Notice of Violation of Consumers Legal Remedies Act**

Dear Mr. Aoyama:

We represent the following persons with respect to the purchase of Acura vehicles manufactured and distributed by American Honda Motor Co., Inc. ("Honda") in the United States: Tasha Williams, Ewelina Ciula, Daniel Abel, Debra Hartzell and Marguerite Floyd. I am writing to provide you notice that our clients demand correction under the California Consumers Legal Remedies Act on behalf of themselves and a nationwide class of all others similarly situated.

Tasha Williams is a resident of California. In August 2018, Ms. Williams purchased a new 2019 Acura RDX from Acura of Laurel in Maryland. Ms. Williams has experienced sudden, unintended and rapid deceleration while driving her Acura on two separate occasions. The first instance happened shortly after she purchased the vehicle. Ms. Williams was driving on a highway behind a large tractor trailer. Without Ms. Williams taking any action, her Acura suddenly decelerated when the car's sensors detected the presence of the trailer in front of Ms. Williams.

The second occasion happened in approximately July 2019. Ms. Williams was travelling on a highway and in an exit-only lane. Not wanting to exit, she indicated her plan to merge back onto the freeway. When she attempted to merge left in front of another car, instead of accelerating to get ahead of traffic, her vehicle decelerated in anticipation of a collision. The car behind her was moving too quickly to stop and would have collided with

June 1, 2020
Page 2

_____

her had the driver not been able to move into another lane to avoid impact. Ms. Williams reported the first instance to an Acura dealership who advised her that there was an issue with faulty driver assist mechanisms but offered no solution.

Ewelina Ciula is a resident of Colorado. In September 2018, Ms. Ciula purchased a new 2019 Acura RDX from Courtesy Acura in Aurora, Colorado. In or around December of 2019, Ms. Ciula was driving on the highway when her vehicle suddenly decelerated even though she did not step on the brake. It was a frightening experience as she thought the car behind her was going to rear-end her. In or around February 2020, Ms. Ciula experienced sudden deceleration again, this time while attempting to change lanes. Ms. Ciula was driving when the car in front of her started to brake. Ms. Ciula, concerned that she did not have time to brake to avoid a collision, decided to merge into the right lane. While merging, she accelerated (because she could see in the rear-view mirror that there was another car behind her on the right lane). When she merged onto the right lane, the vehicle decelerated from 50 miles per hour to approximately 20 miles per hour, which caused the driver of the car behind her to slam on their brakes in order to avoid a collision.

Daniel Abel is a resident of Wisconsin. In October 2018, he purchased a new Acura RDX from an authorized dealer in Middleton, Wisconsin. Mr. Abel has experienced sudden and unintended deceleration while driving his car on the highway numerous times. The deceleration frequently has occurred when he is merging onto the highway, or exiting from the highway as he is merging into or out of a lane. One time, he tried to pass a tanker and once he got into the passing lane, the car decelerated creating a dangerous situation. Mr. Abel wrote to Acura regarding the sudden deceleration, but has not been provided with any explanations or solutions.

Debra Hartzell is a resident of Florida and Maryland. In November 2018, Ms. Hartzell purchased a new 2019 Acura RDX from Norris Acura West in Ellicott City, Maryland. Sometime after purchasing her car, Ms. Hartzell went on a road trip from Florida to Maryland. While travelling on the freeway, Ms. Hartzell's car suddenly decelerated from approximately 70 mph to 20 mph. Ms. Hartzell was not attempting to change lanes or driving too close to another car. She was unable to accelerate the car above 20 mph even when she stepped on the gas pedal. Assuming that she had run out of gas, she pulled over to the side of the freeway and had her car towed to a nearby Acura dealership. The dealership advised her that they tested the car and found no "error code" and that the car was safe to drive.

Marguerite Floyd is a resident of California. Ms. Floyd purchased a 2016 Acura MDX in January 2017 from David MacDavid Acura in Austin, Texas. Soon after purchasing the vehicle, Ms. Floyd began to experience sudden, unintended deceleration, especially while the vehicle was travelling downhill. Ms. Floyd's car continues to suffer from spontaneous, unintended deceleration to this day.

June 1, 2020
Page 3

_____

We are informed that the defects described herein are present in 2019-2020 Acura RDX and 2016-2020 MDX vehicles (the "Acura Vehicles"). Like our clients, other similar purchasers across the country also purchased defective Acura Vehicles.

What presumably was intended to be a safety measure – slowing the speed of the car to avoid a collision – has instead made the Acura Vehicles dangerous and unreliable. We are informed and believe that in some instances, the Acura Vehicles not only suddenly and rapidly decelerated but shifted into neutral or stalled. Because there is no way to override the system by pressing on the gas pedal, drivers are unable to accelerate or maintain speed even where conditions make it necessary to do so.

The safety and dependability of the Acura Vehicles were important factors in our clients' decisions to purchase them. Before buying their cars, our clients reviewed the Acura brochure for the vehicles as well as the "window sticker" which listed official information about the car. Nowhere was it disclosed that the cars they were interested in purchasing, and eventually purchased, suffered from a dangerous defect and were at risk of failing at high speeds.  Instead, Honda misrepresented the safety and reliability of the Acura Vehicles by concealing the defects described herein and failing to take any steps to repair those defects once they were brought to their attention. Had our clients known that their cars possessed a defect which materially affected the ability of those cars to provide safe and reliable transportation by suddenly decelerating, stalling or shutting down, they would not have purchased them.

Honda knew or should have known that the Acura Vehicles were defective. By failing to disclose the defect, Honda violated the Consumers Legal Remedies Act, Cal. Civil Code sections 1750 *et seq*., including the following sections:

- Cal. Civil Code § 1770(a)(5), which prohibits representing that goods or services characteristics which they do not have.

- Cal. Civil Code § 1770(a)(7) which prohibits representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

The Consumers Legal Remedies Act provides for injunctive relief and actual damages.  Cal. Civil Code §1780(a). On behalf of our clients and all other similarly situated purchasers of Acura vehicles, we demand that Honda remedy the above violations within thirty (30) days of receiving this letter, as required the CLRA, by:

- Issuing a recall of Acura Vehicles and notifying purchasers about the defects and need for repairs;
- Repairing the Acura Vehicles at no cost to the purchasers or refunding to consumers their purchase price of all Acura Vehicles;

June 1, 2020
Page 4

- Notifying all purchasers of Acura Vehicles that repairs and refunds are available;
- Agreeing to cease violating the CLRA; and
- Paying reasonable attorneys' fees.

If Honda does not provide the relief requested in this letter within 30 days, our clients will sue for other damages, among other things, under the Consumer Legal Remedies Act.

As we are representing Ms. Williams, Ms. Hartzel, Mr. Abel, Ms. Ciula and Ms. Floyd, all contact with them must be made through our firm.  I am available to discuss any reasonable offer of settlement you may wish to make.  You may reach me directly at (650) 784-4007 or by e-mail at mram@robinskaplan.com.

Very Truly Yours,

Michael F. Ram